IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREG ALLEN, MARY L. BRONSON, )
LESTER BULLARD, ROBERT )
COLEMAN, JEANNETTE L. CRAIG, )
JAMES E. FARRIES, ROBIN FOUCE, )
PATRICK F. FREEMAN, TIFFANY )
HARBOUR, JAMES A. HARRIS, )
DIETRA HAWKINS, IKE HEFLIN, )
DONNA JACKSON, HARRIS W. )
JENKINS, SR., PATRICIA KELLEY, )
GWENDOLYN MOORE, DERRICK )
MORGAN, JAMES MURPHY, JO ANN )
NORRIS, OTIS RIGGINS, CHRISTI )
SIMMS, ERVIN STEWART, JAMES L. )
STRONG, MICHAEL RUGGS, )
MATTHEW WHITFIELD, FRANK )
WILSON and FREEMAN YOUNG on )
behalf of themselves and all other black )
persons similarly situated, )
)
    Plaintiffs, )
)
v. )
)
NAVISTAR INTERNATIONAL, CORP., )
)
    Defendant. )

**DOCKETED**

OCT 17 2001

JUDGE BUCKLO

MAGISTRATE JUDGE SCHENKIER

CIVIL ACTION NO.:

**01C 7955**

**CLASS ACTION COMPLAINT**

FILED
01 OCT 16 PM 1:44
CLERK
U.S. DISTRICT COURT

**COMPLAINT-CLASS ACTION**

I.    **NATURE OF THIS ACTION**

1.    This action is brought by twenty-four current African-American employees of

Navistar International, Corporation (hereinafter referred to as "Navistar" or "Defendant"), two

former African-American employees, and one African-American applicant of the defendant's facility

in Indianapolis, Indiana. These twenty-seven individuals (hereinafter referred to as "Representative

Plaintiffs") bring this action on behalf of themselves and other similarly situated persons of their race

to redress Defendant's continuing systemic pattern and practice of racial discrimination in employment.

2.      Navistar supervisors and managers have created and condoned a work environment that is hostile to African-American employees including the plaintiffs.   White supervisors, managers, and white employees with the knowledge of management have made racially derogatory, demeaning, threatening and discriminatory statements to Plaintiffs and other class members.

3.      Navistar does not have effective racial harassment or non-discrimination policies and procedures which are designed to prevent, and remedy racial intolerance.

4.      Navistar has followed a general practice of discriminating against African-Americans with regards to hiring, compensation, promotion, demotion, job assignments, training, skills qualification, transfer, layoff, discharge, disciplinary practices, racial harassment, racial intimidation and retaliation.  African-American employees are expressly and impliedly discouraged from seeking overtime, higher paying positions and higher responsibility positions, and are denied training and opportunities to demonstrate the qualifications necessary to obtain overtime and higher responsibility positions, and are denied the opportunity to participate in apprenticeship programs. The result has been a significantly segregated work force, with African-Americans locked out of higher paying positions.

5.      Navistar's continuing systemic pattern and practice of racial discrimination in employment has affected the Class Representatives and the class members they seek to represent in the following ways:

a.      Navistar has failed and refused to address complaints of racial harassment and

2

racial intimidation, and by its express and/or implied indifference has fostered a climate hostile to African-American employees including the Plaintiffs.

     b.     Navistar has failed and refused to retain, recruit, and hire African-American for positions at all levels of employment on an equal basis with whites because of their race, thereby discriminating against those African-Americans who were not hired and African-Americans who were employed but were deprived of their right to work in a non-segregated environment.

     c.     Navistar restricts and excludes African-Americans from higher pay, overtime, and higher responsibility positions by preventing and discouraging them from seeking training and skills qualifications needed to obtain higher responsibility.

     d.     Navistar restricts and excludes African-Americans from skilled tradesman and/or apprentice programs because of their race, this has resulted in an overwhelming representation of whites in the higher paying skilled craft-positions, while African-Americans make up the majority of general laborers.

     e.     Navistar has terminated African-Americans because of their race and because they opposed or resisted discriminatory practices or harassment.

     f.     Navistar disciplines African-Americans more harshly for small infractions while similarly situated whites who commit similar or more egregious offenses receive light reprimands or no discipline at all.

## II.    **JURISDICTION AND VENUE**

6.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), and (4), 2201 and 2202, 42 U.S.C. 2000d-2, 2000e5(f).   This is a suit authorized and instituted

pursuant to the Act of Congress known as "The Civil Rights Act of 1866," 42 U.S.C. § 1981 and

1981a and the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended by the Civil Rights

Act of 1991.

7.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(B) & (C)

because Navistar's Home Office is here, the persons responsible for overseeing the human resources

function are here, Navistar maintains personnel records here, and engages in or ratifies illegal

conduct adversely affecting the Plaintiffs here.

8.      The Plaintiffs have fulfilled all conditions precedent to the institution of this action

under "The Civil Rights Act of 1866," 42 U.S.C. § 1981 and 1981(a) and under Title VII of the Act

of Congress known as the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended by the

Civil Rights Act of 1991.  On March 30, 2001, the Equal Employment Opportunity Commission

issued a determination that the charging parties, with the exception of Matthew Whitfield, and a class

of African-American employees had been harassed and subjected to a hostile work environment

because of race and that Defendant had failed to take effective action to eliminate this harassment.[1]

On July 18, 2001, after efforts to conciliate Plaintiffs' charges proved unsuccessful, the Equal

Employment Opportunity Commission issued all the Plaintiffs Notices of Right to Sue.  Plaintiffs

timely filed this action within the four year statute of limitations applicable under 42 U.S.C. § 1981,

42 U.S.C. §1981 (b) and within ninety (90) days of the receipt of their right to sue letters pursuant

to Title VII.

---

[1]The EEOC determined that the Defendant's failure to maintain applicant flow logs
identifying all applicants considered during the period reviewed by EEOC investigators violated
the record-keeping requirements of Title VII of the Civil Rights Act of 1964.  Whitfield was an
applicant.

III.  **PARTIES**

A.  **REPRESENTATIVE PLAINTIFFS**

9.  **Representative Plaintiff Greg Allen** is an African-American citizen of the United States and a resident of Indiana. Allen has worked for Navistar from 1994 to the present in Indianapolis, Indiana. Allen is currently employed on the Assembly Line as a Utility Technician. He is a representative of the class.

10.  **Representative Plaintiff Mary L. Bronson** is an African-American citizen of the United States and a resident of Indiana. Bronson has worked for Navistar from 1994 to the present in Indianapolis, Indiana. Bronson is currently employed as a Utility Person. She is a representative of the class.

11.  **Representative Plaintiff Lester Bullard** is an African-American citizen of the United States and a resident of Indiana. Bullard has worked for Navistar from 1994 to the present in Indianapolis, Indiana. Bullard is currently employed as a Tester. He is a representative of the class.

12.  **Representative Plaintiff Robert Coleman** is an African-American citizen of the United States and a resident of Indiana. Coleman has worked for Navistar from 1955 to the present in Indianapolis, Indiana. Coleman is currently employed as a Major Repairman. He is a representative of the class.

13.  **Representative Plaintiff Jeanette L. Craig** is an African-American citizen of the United States and a resident of Indiana. Craig has worked for Navistar from 1972 to the present in Indianapolis, Indiana. Craig is currently employed as a Spare Operator. She is a representative of the class.

14.  **Representative Plaintiff James E. Farries** is an African-American citizen of the

5

United States and a resident of Indiana. Farries has worked for Navistar from 1994 to the present in Indianapolis, Indiana. Farries is currently employed as a Inspector. He is a representative of the class.

15.     **Representative Plaintiff Robin Fouce** is an African-American citizen of the United States and a resident of Indiana. Fouce has worked for Navistar from 1998 to the present in Indianapolis, Indiana. Fouce is currently employed as a Spare Operator. She is a representative of the class.

16.     **Representative Plaintiff Patrick Freeman** is an African-American citizen of the United States and a resident of Indiana. Freeman has worked for Navistar from 1994 to the present in Indianapolis, Indiana. Freeman is currently a employed as a Spare Operator. He is a representative of the class.

17.     **Representative Plaintiff Tiffany Harbour** is an African-American citizen of the United States and a resident of Indiana. Harbour has worked for Navistar from 1998 to the present in Indianapolis, Indiana. Harbour is currently employed as a Production Worker. She is a representative of the class.

18.     **Representative Plaintiff James A. Harris** is an African-American citizen of the United States and a resident of Indiana. Harris has worked for Navistar in Indianapolis, Indiana since 1995, however, he worked for sixteen years at a now closed Navistar facility in Louisville, Kentucky. Murphy is currently employed as a Spare Operator. He is a representative of the class.

19.     **Representative Plaintiff Dietra Hawkins** is an African-American citizen of the United States and a resident of Indiana. Hawkins worked as a Supervisor for Navistar at its Indianapolis, Indiana location from October of 1998 until her termination on February 28, 2000. She is a representative of the class.

6

20.    **Representative Plaintiff Ike Heflin** is an African-American citizen of the United States and a resident of Indiana. Heflin worked for Navistar from 1994 until October of 2000 in Indianapolis, Indiana. He is a representative of the class.

21.    **Representative Plaintiff Donna Jackson** is an African-American citizen of the United States and a resident of Indiana. Jackson has worked for Navistar from 1996 to the present in Indianapolis, Indiana. Jackson is currently employed as an Electrician. She is a representative of the class.

22.    **Representative Plaintiff Harris W. Jenkins, Sr.** is an African-American citizen of the United States and a resident of Indiana. Jenkins has worked for Navistar from 1971 to the present in Indianapolis, Indiana. Jenkins is currently employed as a Utility Technician. He is a representative of the class.

23.    **Representative Plaintiff Patricia Kelly** is an African-American citizen of the United States and a resident of Indiana. Kelly has worked for Navistar from 1995 to the present in Indianapolis, Indiana. Kelly is currently employed as a Utility Person. She is a representative of the class.

24.    **Representative Plaintiff Gwendolyn Moore** is an African-American citizen of the United States and a resident of Indiana. Moore has worked for Navistar from 1978 to the present in Indianapolis, Indiana. Moore is currently employed as a Laborer. She is a representative of the class.

25.    **Representative Plaintiff Derrick Morgan** is an African-American citizen of the\ United States and a resident of Indiana. Morgan has worked for Navistar from 1994 to the present in Indianapolis, Indiana. Morgan is currently employed as a Tester. He is a representative of the class.

26.     **Representative Plaintiff James Murphy** is an African-American citizen of the United States and a resident of Indiana. Murphy has worked for Navistar from 1972 to the present in Indianapolis, Indiana. Murphy is currently employed as a Utility Person. He is a representative of the class.

27.     **Representative Plaintiff Jo Ann Norris** is an African-American citizen of the United States and a resident of Indiana. Norris has worked for Navistar from 1972 to the present in Indianapolis, Indiana. Norris is currently employed as a Laborer. She is a representative of the class.

28.     **Representative Plaintiff Otis Riggins** is an African-American citizen of the United States and a resident of Indiana. Riggins has worked for Navistar from 1997 to the present in Indianapolis, Indiana. Riggins is currently employed as a Laborer. He is a representative of the class.

29.     **Representative Plaintiff Michael Ruggs** is an African-American citizen of the United States and a resident of Indiana. Ruggs has worked for Navistar from 1994 until his termination in September 2001 in Indianapolis, Indiana. Ruggs was formerly employed as a Millwright. He is a representative of the class.

30.     **Representative Plaintiff Christi Simms** is an African-American citizen of the United States and a resident of Indiana. Simms has worked for Navistar from 1995 to the present in Indianapolis, Indiana. Simms is currently employed as a Utility Technician. She is a representative of the class.

31.     **Representative Plaintiff Ervin Stewart** is an African-American citizen of the United States and a resident of Indiana. Stewart has worked for Navistar from 1995 to the present

in Indianapolis, Indiana. Stewart is currently employed as an Inspector. He is a representative of the class.

32.     **Representative Plaintiff James L. Strong** is an African-American citizen of the United States and a resident of Indiana. Strong has worked for Navistar from 1994 to the present in Indianapolis, Indiana. Strong is currently employed as a Utility Technician. He is a representative of the class.

33.     **Representative Plaintiff Matthew Whitfield** is an African-American citizen of the United States and a resident of Indiana. Whitfield applied for employment with Navistar in 1996 and 1999 as an Electrician. Each time he was refused employment. He is a representative of the class.

34.     **Representative Plaintiff Frank Wilson** is an African-American citizen of the United States and a resident of Kentucky. Wilson has worked for Navistar from 1996 to the present in Indianapolis, Indiana. He is currently employed as a Utility Person. He is a representative of the class.

35.     **Representative Plaintiff Freeman Young** is an African-American citizen of the United States and a resident of Indiana. Young has worked for Navistar from 1965 to the present in Indianapolis, Indiana. Young is currently employed as an Electrician. He is a representative of the class.

**B.     DEFENDANT**

36.     **Defendant Navistar International Corporation,** is a worldwide corporation that operates in three principal industry segments: truck, engine and financial services. Formerly known

9

as International Harvester, Navistar is the nation's second-biggest producer of heavy-duty trucks, which it sells under the International brand. It also manufactures mid-sized trucks, school buses and diesel engines, which it sells to Ford and other truck makers. Navistar's principle place of business is Warrenville, Illinois. The acts set forth in this Complaint were authorized, ordered and/or done by Navistar's officers, agents, employees, and /or representatives while actively engaged in the management of Navistar's business.

## IV.     CLASS ALLEGATIONS

### A.     CLASS DEFINITION

37.     The Representative Plaintiffs sue on behalf of themselves and on behalf of all other similarly situated African-American employees, applicants, and those persons discouraged from making application due to the existence of racially discriminatory practices. The Representative Plaintiffs are all members of the class they seek to represent. That class consists of current and former African-American employees, of Navistar at its Indianapolis, Indiana engine plant, and applicants for such employment who have been subject to one or more aspects of the systemic racial discrimination and racial harassment described in this Complaint. Such systemic racial discrimination includes the Defendant's (1) failure to promulgate, maintain, and enforce effective racial harassment, racial intimidation and/or non-discriminatory employment policies, practices (2) unequal terms and conditions of employment; and (3) discriminatory selection and hiring policies.

### B.     COMMON QUESTIONS OF LAW AND FACT

38.     The prosecution of the claims of the Representative Plaintiffs requires adjudication of numerous questions of law and fact common to their individual claims and those of the putative class they seek to represent. The common questions of law would include, *inter alia*: whether the

Defendant has engaged in systemic race discrimination in its tolerance of a racially hostile environment, selection, testing, training, assignment of overtime and promotion policies, practices and procedures, and in the general terms and conditions of work and employment in a manner made unlawful under "The Civil Rights Act of 1866," 42 U.S.C. § 1981 and 1981a and the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended by the Civil Rights Act of 1991. The common questions of fact would include, *inter alia*: (1) whether the patterns of racial harassment alleged by Plaintiffs occurred; (2) whether these incidents were sufficient to create a hostile or abusive work environment in violation of the law; (3) whether Navistar knowingly allowed such racial harassment to continue by failing to take prompt and effective action to stop the harassment; (4) whether Navistar discriminated against African-American employees because of their race with regards to hiring, overtime, promotion to supervisory or managerial positions, work assignments, transfers, compensation, access to skilled trades, and discipline; and (5) and other terms and conditions of employment. The details of the Representative Plaintiffs' claims are encompassed within the claims prosecuted on behalf of the class and set forth in this Complaint.

### C.    TYPICALITY

39.    The claims of the Representative Plaintiffs are typical of those of the members of the class. The Representative Plaintiffs and all class members have been and are similarly adversely affected by the systemic discriminatory practices complained of herein. Specifically, the representative claims, like those of the class members, arise out of Defendant's pervasive discriminatory conduct with regard to racial harassment, hiring, overtime, promotion to supervisory or managerial positions, work assignments, transfers, compensation, access to skilled trades,

discipline, and other terms and conditions of employment.

40.     Racial harassment and racial discrimination affects the work environment of the Representative Plaintiffs and the class they seek to represent in the same way. In addition, discrimination in overtime, training, promotion, work assignments, transfers, and access to the skilled trades affects the compensation of the Representative Plaintiffs and the class they seek to represent in the same way. Moreover, Navistar's discriminatory hiring practices deprives African-American employees and applicants of the opportunity to be supervised and work with people of their own race who would have been employed in the absence of discrimination. Navistar's white managers and supervisors have reinforced racial stereotypes and biases, have favored white employees and have otherwise created a working environment hostile to African-American employees. Navistar's white managers and supervisors have manipulated the rules so that African-American employees, including the Representative Plaintiffs, are disciplined more frequently and more harshly than their similarly situated white counterparts.

41.     African-American employees, including the Representative Plaintiffs, have complained repeatedly to Navistar's management about discriminatory treatment with regard to racial harassment, overtime, training, promotion, work assignments, transfers, discipline and access to the skilled trades. Defendant has failed to investigate these complaints or has failed to investigate them adequately. The Defendant has also failed to implement adequate procedures to prevent and/or correct this pattern and practice of discrimination and racial harassment.

42.     Navistar has failed to create adequate incentives for its management and supervisors to comply with equal employment opportunity laws regarding each of the policies, practices and procedures described in this Complaint and has failed to discipline adequately its managers and

other employees for violation of these laws.

43.     The relief necessary to remedy the claims of the Representative Plaintiffs is the same relief that is necessary to remedy the claims of the putative class members in this case.  The Representative Plaintiffs seek the following relief for individual claims and class claims asserted herein:  (1) declaratory judgment that Defendant has engaged in systemic racial discrimination, racial harassment and racial intimidation against African-Americans; (2) a permanent injunction against such continuing discrimination; (3) injunctive relief which restructures Navistar's selection, transfer, training, work environment, and discipline policies, practices and procedures so that Plaintiffs and class members will be able to compete fairly in the future for promotions, transfers and/or admission to the skilled trades and/or apprentice programs and enjoy terms and conditions of employment traditionally afforded similarly situated white employees; (4) backpay, front pay, compensatory damages, punitive damages, and other equitable remedies necessary to make the Plaintiffs, and the class, whole from Navistar's past discrimination; and (5) attorneys' fees, costs, and expenses.

## D.     NUMEROSITY AND IMPRACTICABILITY OF JOINDER

44.     The class that the Representative Plaintiffs seek to represent is to numerous to make joinder practicable.  The proposed class consists of hundreds of former, current, and future African-American employees who either have been, are, or will be, employed by Navistar.  Navistar's pattern and practice of race discrimination and racial harassment also makes joinder impracticable by discouraging African-American individuals from applying for or pursuing promotional, training or transfer opportunities, thereby making it impractical and inefficient to identify many members of the class prior to the determination of the merits of Navistar's class wide liability.

13

### E. ADEQUACY OF REPRESENTATION

45.     The Representative Plaintiffs will fairly and adequately protect the interests of the class inasmuch as they are broadly representative, as reflected in the preceding paragraphs. There are no conflicts of interest present with the members of the proposed class as each would benefit from the imposition of a remedy for the Defendant's discriminatory employment practices. The Representative Plaintiffs have retained counsel experienced in litigating major class actions in the field of employment discrimination, and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity. The combined interest, experience, and resources of the Representative Plaintiffs and their counsel to litigate competently the individual and class claims of race-based employment discrimination at issue satisfy the adequacy of representation requirement under Fed.R.Civ.P. 23(a)(4).

### F. EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

46.     Certification of a class of similarly-situated African-American individuals is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the Representative Plaintiffs and the proposed class. The individual claims of the Representative Plaintiffs require resolution of the common question of whether Defendant has engaged in a systemic pattern of racial discrimination and racial harassment against African-American individuals. The Representative Plaintiffs seek remedies to undo the adverse effects of such discrimination and harassment in their own lives, careers and working conditions and to prevent continued racial discrimination and racial harassment in the future. The Representative Plaintiffs have standing to seek such relief because of the adverse effect that such discrimination and racial harassment has had on them individually and on African-American individuals generally. In order

14

to gain such relief for themselves, as well as for the putative class members, the Representative Plaintiffs will first establish the existence of systemic racial discrimination and harassment as the premise of the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the class of African-American individuals affected by the common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Representative Plaintiffs, the class and the Defendant. The Representative Plaintiffs' individual and class claims are premised upon the traditional bifurcated method of proof and trial for systemic disparate treatment claims of the type at issue in this complaint. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

### G.     CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(2)

47.     Navistar has acted on grounds generally applicable to the named Plaintiffs and the proposed class by adopting and following systemic practices and procedures that are racially discriminatory. Navistar's racial discrimination and racial harassment are its standard operating procedure rather than sporadic occurrences. Navistar has refused to act on grounds generally applicable to the class by: (1) refusing to provide a working environment free of racial harassment and retaliation; (2) refusing to adopt or follow selection, discipline and training procedures which do not systemically discriminate against African-American individuals; and (3) refusing to provide equal terms and conditions of work to African-American individuals. Navistar's systemic discrimination and refusal to act on grounds that are not racially discriminatory have made appropriate final injunctive relief and declaratory relief with respect to the class as a whole.

15

48.    The injunctive relief and declaratory relief are the predominate reliefs sought because they are both the cumulation of the proof of the Defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the named Plaintiffs' and class members' entitlement to monetary and non-monetary remedies at Stage II of such a trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic racial discrimination and harassment against African-American individuals. Such relief is the factual and legal predicate for the named Plaintiffs' and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by such systemic discrimination.

## H.    ALTERNATIVELY CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(3)

49.    The common issues of fact and law affecting the claims of the Representative Plaintiffs and proposed class members, including, but not limited to, the common issues identified in paragraphs 1-48 above, predominate, over any issues affecting only individual claims.

50.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the named Plaintiffs and members of the proposed class.

51.    The cost of proving the Defendant's pattern or practice of discrimination makes it impracticable for the named Plaintiffs and members of the proposed class to control the prosecution of their claims individually.

52.    The Northern District of Illinois is the most logical forum in which to litigate the claims of the Representative Plaintiffs and the proposed class in this case because the Defendant's home office is here; the persons responsible for overseeing the human resources function are here;

16

Navistar maintains personnel records here; and engages in or ratifies illegal conduct adversely affecting the Plaintiffs here.

## V.    ALLEGATIONS OF THE PLAINTIFFS

53.    **Representative Plaintiff Greg Allen** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment.  This pattern and practice of racial discrimination has adversely affected Allen by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

54.    Throughout his employment with Navistar, Allen has witnessed or experienced the unequal treatment of African American employees.  For example, from 1994 until 2000, Plaintiff Allen observed the word **"Nigger"** painted on the defendant's restroom walls on almost a daily basis. Allen and other African-American employees have complained to management on several occasions regarding these racially demeaning incidents, however, no effective corrective action has been taken. In June of 1997, the Office of Federal Contract Compliance Programs warned the Defendant about its problems regarding racial graffiti.  Upon information and belief, the graffiti observed by the OFCCP included the following racial slurs:  **Jiga-boo; Black is beautiful, tan is grand, but white is still the big boss man; and if black is beautiful, I just shit a masterpiece.**

17

55.     Further, since 1994, Allen has repeatedly requested training that would allow

him to compete for openings in Department 08, which is commonly referred to as Major Repair.

Each time he has been denied because of his race. Navistar officials routinely refuse to provide

training to African-American employees on the basis of their race, while similarly situated white

employees regularly receive training which allows them to qualify for better paying positions. This

practice has the effect of preventing Allen and other African-American employees from qualifying

for positions of greater responsibility and pay. Navistar's reasons for denying this training to African-

American employees are always a pretense for race discrimination.

56.     As a result of the Defendant's discriminatory actions, Allen has suffered extreme

harm including, but not limited to, mental anguish, emotional distress, and mental suffering.

57.     **Representative Plaintiff Mary L. Bronson** was adversely affected by the challenged

systemic practices and pattern of racial discrimination, racially hostile environment, and racial

harassment and/or retaliation with respect to appointments, selection decisions, job assignments,

promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of

employment. This pattern and practice of racial discrimination has adversely affected Bronson by

denying her the opportunity to work in an integrated environment in which African-American

employees hold management positions; by not being considered for job classifications traditionally

held by white employees at Navistar; by being denied training regularly provided to white employees;

by being required to work in conditions in which she and other members of her race were demeaned,

and by being subjected to unequal terms and conditions of employment.

58.     Throughout her employment with Navistar, Bronson has witnessed or experienced the

unequal treatment of African American employees. For example, Bronson and other African-

18

American employees have been subjected to a racially hostile work environment. Specifically, from 1994 until the present, Bronson has seen signs in her work area stating **"Niggers go home."** Further, Bronson has been informed by other African-American employees that white employees regularly tell racist jokes in their presence. For example, Bronson was informed that a white employee stated that, **"all Niggers should be put on ships and sent back to Africa."** Bronson and other African-American employees have complained to management on several occasions regarding these racially demeaning incidents, however, no effective corrective action was taken.

59.     From 1994 until the present, Bronson and other African-American employees have been made to perform the dirtiest and least desirable jobs in their department. These positions are supposed to be rotated among the employees in the department on a regular basis, however, this has not been the Defendant's practice with regards to its African-American employees. Defendant's policy has been to allow white employees within the department to stay in the most desirable positions without rotation. Bronson and other African-American employees have reported this discriminatory treatment to management but nothing has been done.

60.     Since 1994, Bronson has repeatedly requested training that would allow her to compete for better paying positions. Each time she has been denied because of his race. Navistar officials routinely refuse to provide training to African-American employees on the basis of their race. Similarly situated white employees regularly receive training which allows them to qualify for better paying positions. This practice has the effect of preventing Allen and other African-American employees from qualifying for positions of greater responsibility and pay. Navistar's reasons for denying this training to African-American employees are always a pretense for race discrimination

61.     In March of 2000, Bronson was reprimanded for an alleged rule infraction.

Specifically, Bronson was reprimanded for exceeding the time allotted for a rest-break. Bronson was not guilty of this infraction. Moreover, even if she was, white employees regularly exceeded their allotted break times without any disciplinary action being taken by Defendant. Defendant disciplines African-American employees more harshly than white employees for the same rules infractions.

62.     As a result of the Defendant's discriminatory actions, Bronson has suffered extreme harm including, but not limited to, mental anguish, emotional distress, and mental suffering.

63.     **Representative Plaintiff Lester Bullard** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile work environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Bullard by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

64.     Throughout his employment with Navistar, Bullard has witnessed or experienced the unequal treatment of African American employees. For example, from 1994 until the after the filing of his EEOC charge, Bullard has seen the word **"Nigger"** and other derogatory and demeaning references to African-Americans in the Defendant's restrooms. Bullard and other African-American employees have complained to management on several occasions regarding these racially demeaning incidents, however, no effective corrective action has been taken.

20

65.    Further, since 1994, Bullard has repeatedly requested training that would allow him to work overtime in Department 08, which is commonly referred to as Major Repair.  An individual must have this training to be eligible for overtime work in Major Repair.  Each time Bullard has been denied because of his race.  Navistar officials routinely refuse to provide training to African-American employees on the basis of their race.  Similarly situated white employees regularly receive training which qualifies them to work in Major Repair.  This practice has the effect of preventing Bullard and other African-American employees from qualifying for positions of greater responsibility and pay. Navistar's reasons for denying this training to African-American employees are always a pretense for race discrimination.

66.    As a result of the Defendant's discriminatory actions, Bullard has suffered extreme harm including, but not limited to,  mental anguish, emotional distress, and mental suffering.

67.    **Representative Robert Coleman** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile work environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment.  This pattern and practice of racial discrimination has adversely affected Coleman by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided  to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

68.    Throughout his employment with Navistar, Coleman has witnessed or experienced

21

the unequal treatment of African American employees. For example, in May of 2000, Coleman observed the racial slurs **"jungle bunnies"** and **"home of the KKK"** written on the walls of Defendant's restrooms. This was not the only occasion that Coleman encountered racially harassing and/or racially intimidating graffiti and symbols at Navistar. For example, in July of 2000, Coleman observed a **"hangman's noose"** attached to a metal ladder near one of Defendant's restrooms. Coleman reported this historic symbol of racial hatred and intimidation to the Union EEO Representative, Johnnie Wade. Wade reported this incident and the noose was eventually taken down, however, Coleman was later informed that over a period of six-weeks the "noose" re-appeared several times. Coleman and other African-American employees have complained to management on several occasions regarding these racially demeaning and threatening incidents, however, no effective corrective action has been taken.

69.     From 1955 until the present, the Defendant has subjected Coleman to different terms and conditions of employment. In or around May of 2000, Coleman's work performance was scrutinized more closely than the work performance of similarly situated white employees. Specifically, employees Calvin Drury and Bud Collier often informed their supervisor, Dave Huey, that Coleman took to long to repair certain engines. Upon receiving these reports from Drury and Collier, Huey would reprimand Coleman for allegedly working to slow. Drury, Collier, and Huey are all white. Huey also assigned Coleman more difficult jobs than Drury and Collier. Huey is no longer Coleman's supervisor and in his absence Coleman has not received any additional reprimands regarding his work performance. Coleman was further discriminated against by Defendant when it allowed white employees to leave garbage and other objects on his tool box. Coleman's tool box and

22

work station were the only areas in his department where trash was allowed to be dumped. Coleman reported these incidents to management, however, nothing was done to correct this behavior.

70.     As a result of the Defendant's discriminatory actions, Coleman has suffered extreme harm, including high-blood pressure, mental anguish, stroke, emotional distress, and mental suffering.

71.     **Representative Plaintiff Jeannette L. Craig** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Craig by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which she and other members of her race were demeaned, and by being subjected to unequal terms and conditions of employment.

72.     Throughout her employment with Navistar, Craig has witnessed or experienced the unequal treatment of African American employees. For example, during the summer of 2000, Craig requested that she be allowed to take the test required to work overtime in Major Repair. Craig's request was denied without explanation. Craig was denied this opportunity because of her race. Similarly situated white employees are routinely allowed to take the test for Major Repair. Navistar officials routinely refuse to provide testing to African-American employees on the basis of their race. This practice has the effect of preventing Craig and other African-American employees from

achieving positions of greater responsibility and pay. Navistar's reasons for denying this testing to African-American employees are always a pretense for race discrimination.

73.    Moreover, Craig has experienced or witnessed the racial harassment and/or intimidation of African American employees. For example, in September of 2000 Craig observed a rope shaped to form a **"hangman's noose"** displayed near her work area. Further, in December of 2000 Craig saw **"KKK"** written on a wall near her work area. Employees have reported these incidents to management, however, no effective corrective action has been taken.

74.    As a result of the Defendant's discriminatory actions, Craig has suffered extreme harm including, but not limited to, mental anguish, emotional distress, and mental suffering.

75.    **Representative Plaintiff James E. Farries** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Farries by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

76.    Throughout his employment with Navistar, Farries has witnessed or experienced the unequal treatment of African American employees. For example, in the summer of 1999, Farries

24

observed the phrase, **"high priced Niggers"** written on a stall in one of the Defendant's restroom. Likewise, Farries has seen the word **"Nigger"** written on the walls of several restrooms in Defendant's Machine Shop. Moreover, in June of 2000, Farries observed a **"hangman's noose"** displayed near an employee cafeteria. This noose was allowed to remain up for approximately two to three shifts before it was taken down. Further, soon after hiring on with the Defendant, Farries was verbally assaulted by a white employee. Specifically, this employee confronted Farries at work and called him **"Nigger"** and **"Porch Monkey."** In approximately 1998, Farries was informed that someone had left a **"KKK"** application on the desk of a newly promoted white supervisor, Dave Johnson. These incidents have been reported to management however no effective corrective action has been taken.

77.     For the past few years, Farries has expressed an interest in receiving training to qualify for a repair position in his department. Farries requested this training as recently as March or April of 2000. Rich Snyder, Farries' supervisor, has refused him training on this job without explanation. Snyder is white. If Farries would have been allowed to train for this position, he would have become eligible to compete for weekend overtime. Similarly situated white employees regularly receive training for this position and make up the majority of individuals receiving overtime in this department. Farries has also witnessed other African-Americans discriminated against with regards to training and overtime. For example, Navistar officials continuously deny African-American employees training and overtime opportunities in Department 51. Because of this discriminatory act, Department 51 is almost completely staffed by white employees.

78.     Farries and other African-American employees are not allowed to exercise their seniority rights with regards to covering assignments in other departments due to employee absences.

Whenever an employee from another department is absent, a designated "utility person" is required to fill that empty slot, however, if there are more empty slots than utility persons, Navistar pulls employees from their regular positions on the line to fill them. Whenever the former situation arises, African-Americans are almost always the first employees to be re-assigned even if less senior white employees are available.

79.     As a result of the Defendant's discriminatory actions, Farries has suffered extreme harm, including, but not limited to, mental anguish, emotional distress and mental suffering.

80.     **Representative Plaintiff Robin Fouce** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Fouce by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which she and other members of her race were demeaned, and by being subjected to unequal terms and conditions of employment.

81.     Throughout her employment with Navistar, Fouce has witnessed or experienced the unequal treatment of African American employees. For example, in the Spring of 2000, Fouce was continuously denied overtime in her department. Fouce's understanding of the policy regarding the allocation of overtime is that the employee who has worked the least amount of overtime is to be offered the opportunity to work overtime first, provided they can perform the job. This policy was

26

not followed with regards to African American employees. The majority of overtime in Fouce's department was almost always awarded to white employees. Likewise, African Americans were not given the same amount and/or quality of training as similarly situated white employees. White employees would either refuse to train African American employees or would shorten their training period. Similarly situated white employees received the full amount of recommended training and sometimes two to three times the recommended amount.

82.     In July or August of 1999, Fouce was required to take a leave of absence to receive medical treatment for a physical ailment. Fouce's leave was approved by the company and within the rules of the collective bargaining agreement. Since that time, Fouce has been continuously harassed about her condition and her attendance. White employees who take medical leave or extended leaves of absence are not subjected to this treatment. Further, Fouce was informed that her supervisor Cherly Rider reportedly stated to another employee that a member of management stated that Fouce was going "down" because of her attendance. Fouce took this as threat to terminate her employment. Moreover, while she has not seen racial graffiti or hangman's nooses herself, Fouce has been made aware of these incidents by other African American employees.

83.     In the Spring of 2001, Fouce was assaulted by three white male employees as she attempted to clock in for her shift. These men pushed and shoved Fouce and yelled obscenities at her. Fouce reported this incident to management, however, no effective corrective action was taken, as these men were allowed to remain employed, even though Navistar allegedly has a "zero" tolerance policy regarding workplace violence.

84.     Since filing her EEOC charge on May 25, 2000, Fouce has been terminated. This incident occurred in early 2001. Fouce was terminated for allegedly failing to follow Navistar's

27

policy regarding sick leave. Fouce did not violate Navistar's policy regarding sick leave as evidenced by the reversal of her termination. Fouce was terminated because of her earlier filed EEOC complaint.

85.    As a result of the Defendant's discriminatory actions, Fouce has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

86.    **Representative Plaintiff Patrick Freeman** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Freeman by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

87.    Throughout his employment with Navistar, Freeman has witnessed or experienced the unequal treatment of African American employees. For example, in June of 2000, Freeman discovered a **"hangman's noose"** displayed in a prominent area within the plant. On another occasion, Freeman witnessed Norm Underwood, a white supervisor, show a **"hangman's noose"** to a supervisor who is a black native of Africa. The African supervisor did not understand the historical significance of this object. Underwood and other white employees laughed at this fact.

88.    Freeman filed an EEOC charge in July of 2000 regarding, *inter alia*, the above

28

mentioned incidents. In September of 2000, Freeman and other African American employees discovered four **"hangman's nooses"** hanging from a beam in Department 08. Further, in March of 2001, Freeman and other African Americans discovered a drawing depicting a Ku Klux Klansman in one of the Defendant's restrooms. Freeman and other African Americans reported these incidents to management, however, no effective corrective action was taken by Navistar.

89.     Since 1994, Freeman has repeatedly requested training that would allow him to work overtime in Department 08, which is commonly referred to as Major Repair. An individual must have this training to be eligible for overtime work in Major Repair. Each time Freeman has been denied because of his race. Navistar officials routinely refuse to provide training to African-American employees on the basis of their race. Similarly situated white employees regularly receive training which qualifies them to work in Major Repair. This practice has the effect of preventing Freeman and other African-American employees from qualifying for positions of greater responsibility and pay. Navistar's reasons for denying this training to African-American employees are always a pretense for race discrimination.

90.     As a result of the Defendant's discriminatory actions, Freeman has suffered extreme harm, including high-blood pressure, post traumatic stress disorder, mental anguish, depressed mood, impairments of functioning at home with his family, insomnia, social isolation and withdrawal, emotional distress, and mental suffering.

91.     **Representative Plaintiff Tiffany Harbour** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of

29

employment. This pattern and practice of racial discrimination has adversely affected Harbour by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which she and other members of her race were demeaned, and by being subjected to unequal terms and conditions of employment.

92. Throughout her employment with Navistar, Harbour has witnessed or experienced the unequal treatment of African American employees. On July 20, 2000, Harbour was given a thirty-day suspension for allegedly violating the sick leave policy. Specifically, Harbour was disciplined because, upon her return to work from an illness, her doctor's statement did not adequately explain that her condition rendered her unable to work. Ralph Western, Dave Canterbury, and Jeff Thatcher informed Harbour of her suspension. Wester, Canterbury, and Thatcher are white. Upon information and belief, white employees have been allowed to return to work with similar doctor's statements without being disciplined. Defendant disciplines African-American employees more harshly than white employees for the same rules infractions.

93. Throughout her employment with Navistar, Harbour has heard other African American employees complain about racist graffiti in Navistar's restrooms. Harbour has received training on how to respond to sexual harassment, however, she has never had any training on how to respond to racial harassment.

94. As a result of the Defendant's discriminatory actions, Harbour has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

95. **Representative Plaintiff James A. Harris** was adversely affected by the challenged

systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Harris by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

96.     Throughout his employment with Navistar, Harris has witnessed or experienced the unequal treatment of African American employees. Harris has been employed with Navistar for about twenty-one years. The last five of those years have been at Navistar's Indianapolis, Indiana location. Since Harris transferred to the Indianapolis location, he has been denied his correct seniority date. This affects Harris' employment status if there is a layoff and other terms and conditions of his employment such as accrual of vacation time and personal leave. Upon information and belief, three white employees who transferred with Harris were allowed to retain their seniority dates.

97.     Since relocating to Navistar's Indianapolis location, Harris has seen racist graffiti displayed in the Defendant's restrooms. Harris is aware that African American employees have complained about this racist graffiti, however, to his knowledge no effective action has been taken.

98.     As a result of the Defendant's discriminatory actions, Harris has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

99.     **Representative Plaintiff Dietra Hawkins** was adversely affected by the challenged

systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Hawkins by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which she and other members of her race were demeaned, and by being subjected to unequal terms and conditions of employment, including a racially hostile work environment.

100.    In October 1998, Hawkins was hired as foreman, however, the company did not offer her the training necessary to complete her job duties. Further, the company did not support Hawkins in a supervisory role. Upon information and belief, the company has a pattern and practice o failing to support their black supervisors in their jobs. For example, Hawkins was asked to be the sole supervisor of a line that normally has two supervisors. Hawkins was overly scrutinized in her work, and had her authority with personnel on the production line severely undermined on several occasions.

101.    The lack of training resulted in the Hawkins' line being shut down. In January 2000, Hawkins was given a written test to pass. Upon information and belief, no white supervisors had been asked to pass a written test. Three weeks after raising issues of disparate treatment with corporate EEO, Hawkins was terminated.

102.    Hawkins was also exposed to a racially hostile environment. Hawkins saw references

32

to **"Niggers"** at work. The failure to have an adequate racial harassment policy contributed to the atmosphere which jeopardized Hawkins employment in a supervisory capacity. Further, the lack of adequate training of managers, supervisors, and hourly employees in Equal Opportunity matters contributed to a culture of racial intolerance which marginalizes African-Americans in the work place.

103. As a result of the Defendant's discriminatory actions, Hawkins has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

104. **Representative Plaintiff Ike Heflin** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Heflin by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

105. Heflin was employed from June 1994, until October 12, 2000. Since his initial employment through the filing of his EEOC charge, Heflin was exposed to racially hostile environment which demeaned and denigrated African-Americans. Heflin alerted and protested to company supervisors the presence of racial graffiti in the work place. When Heflin reported issues of racial hatred, the company indicated that they did not approve of the graffiti, but did not take

effective remedial action to address these issues or put any stop to expressions of intolerance in the workplace. Heflin saw and reported manifestations of racial animus more than once. These slurs included **"Niggers bring down the quality of the work"**, **"It would be a better place to work if all the Niggers left the plant"**, **"What is the difference between a black and a Nigger nothing"**, **"Niggers bring down the profit sharing"**. The constant and continuous exposure to the racially hostile environment inside the plant demeaned and demoralized Heflin in the work place.

106.    Heflin was one of the few African-Anmericans to obtain an assignment in the "Major Repair Area." However, in that work area, he was held to a different standard than his white counterparts regarding the number of engines he was required to repair in a shift. Further, after being assigned to such an area he was not given the necessary training and support to succeed in this position. The lack of training resulted in more discipline being directed towards Heflin.

107.    Heflin was disciplined for work performance, while similarly situated white employees would not receive discipline for similar infractions. For example, a white employee on the payroll utilizes part of his work shift to walk around and sell employees popcorn.

108.    After filing formal charges of discrimination, Heflin was closely monitored and terminated from employment.

109.    As a result of the Defendant's discriminatory actions, Heflin has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

110.    **Representative Plaintiff Donna Jackson** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of

34

employment. This pattern and practice of racial discrimination has adversely affected Jackson by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which she and other members of her race were demeaned, and by being subjected to unequal terms and conditions of employment.

111.    Jackson has been employed from 1996 to present as an electrician. When first employed, Jackson was restricted for eighteen months to one job; changing light bulbs. The company has denied Jackson training, as is common to the African-American experience in the plant regardless of actual job assignment. Jackson is one of three African-Americans in the plant who are electricians out of sixty persons employed in this capacity. The Defendant's minimal/nonexistent efforts to hire African-Americans into skilled trades is simply reflective of their attitudes towards African-Americans, rather than any shortage of applicants.

112.    In the department, Jackson has been impersonated by a white employee who put a mop over his head and painted the mop black in an attempt to imitate Jackson. To the employees surprise, Jackson discovered this conduct and reported it to management. After reporting the conduct, Jackson was exiled in her own department, and treated as an outcast. Dan McDonald's, Jackson's supervisor, refusal to commit to Jackson, unequivocally, that such behavior would not be tolerated underscores the second class status Jackson experiences in her work place.

113.    Jackson has seen written racial slurs such as **"eat shit nigger"** over a letter encouraging persons to get along. This comment was allowed to remain on the bulletin board for a number of days before being removed.

35

114. As a result of the Defendant's discriminatory actions, Jackson has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

115. **Representative Plaintiff Harris W. Jenkins, Jr.** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Jenkins by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

116. Jenkins, an employee since 1971 is currently employed as laborer. Jenkins has requested training that would allow him work in Major Repair. In order to work in this department, Jenkins has been informed that he must be trained and pass a test. This is the department which provides better paying opportunities. Jenkins is denied the training and any testing for this job. Prior to Jenkins requesting to be in the job, the company did not require the passing of any tests to secure these positions. Navistar officials routinely refuse to provide training to African-American employees on the basis of their race. Similarly situated white employees regularly receive training which qualifies them to work in Major Repair. This practice has the effect of preventing Jenkins and other African-American employees from qualifying for positions of greater responsibility.

117. As a result of the Defendant's discriminatory actions, Harris has suffered extreme

36

harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

118.    **Representative Plaintiff Patricia Kelly** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Kelly by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which she and other members of her race were demeaned, and demoralized by being subjected to unequal terms and conditions of employment.

119.    Kelly is denied the training and rotation responsibilities that would allow her to have employment opportunities with out respect to race. The Defendant does not allow African-Americans the training opportunities which will insure that job assignments are made without respect to race. Utilizing a "tap on the shoulder" approach to training insures that opportunities are made available to white employees, this practice perpetuates discrimination inside the plant.

120.    Kelly has been made aware of racial graffiti which has permeated the men's locker and rest rooms. Having to work in an atmosphere in which such conduct goes unchecked materially alters the terms and conditions of her employment as well as all African-American employees as a class. Within the last eight weeks, Kelly has been made aware that a white individual was discovered making racial cartoons and was not disciplined.

121.    As a result of the Defendant's discriminatory actions, Kelly has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

122.    **Representative Plaintiff Gwendolyn Moore** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Moore by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which she and other members of her race were demeaned, and by being subjected to unequal terms and conditions of employment.

123.    Moore began her in 1978, and has had the unfortunate experience to work in an environment which reflects intolerance and base racial hatred. During the course of her employment she has been called, **"nigger/porch monkey"**, **"Aunt Jemima"** and **"porch monkey."** Moore has also had to witness other African-American being subjected to racial slurs.

124.    In February 2000, Moore intervened in a dispute when a white employee who was upset that a black employee was going to enter Department 08, confronted the black employee by saying **"Niggers ain't supposed to ever go around us."** Moore reported the incident to the internal EEO, and as has been the policy, custom and practice of the company when notified by employees of blatant discrimination, the company did not respond. The company's lack of any effective remedial program underscores the company's willingness to overlook these matters.

125.    As a result of the Defendant's discriminatory actions, Moore has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

126.    **Representative Plaintiff Derrick Morgan** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment.  This pattern and practice of racial discrimination has adversely affected Morgan by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

127.    Since 1994, Morgan has repeatedly requested training that would allow him to compete for better paying positions and overtime.  Each time he has been denied because of his race.  Navistar officials routinely refuse to provide training to African-American employees on the basis of their race.  Similarly situated white employees regularly receive training which allows them to qualify for better paying positions and overtime.  This practice has the effect of preventing Morgan and other African-American employees from qualifying for positions of greater pay and overtime.  Navistar's reasons for denying this training to African-American employees are always a pretense for race discrimination.  When African-Americans are allowed to work overtime it is usually on the dock, where the work is extremely physically demanding.  For the most part, similarly situated white employees, received easier assignments.

39

128.     Throughout his employment with Navistar, Morgan has observed that African-American employees are disciplined more harshly than whites for similar offenses.  This policy has resulted in African-American employees being terminated at a higher rate than white employees.

129.     As a result of the Defendant's discriminatory actions, Morgan has suffered extreme harm, including mental anguish, emotional distress, and mental suffering.

130.     **Representative Plaintiff James Murphy** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment.  This pattern and practice of racial discrimination has adversely affected Murphy by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

131.     Throughout his employment with Navistar, Murphy has witnessed or experienced the unequal treatment of African American employees.  For example, in January or February 2000, Murphy observed the phrase **"Niggers go home"** written on the restroom wall near Department 04. Other racial slurs Murphy has observed include, but are not limited to, **"Porch Monkey"** and **"Nigger."**  Murphy and other African-American employees reported these incidents of racial harassment to Navistar's management, however, no effective corrective action has been taken.

132.     Throughout his employment with Navistar, Murphy and other African-Americans

40

have routinely been denied training opportunities. For example, in March of 2001, Murphy repeatedly requested training that would allow him to compete for overtime. Each time he has been denied because of his race. Navistar officials routinely refuse to provide training to African-American employees on the basis of their race, while similarly situated white employees regularly receive training which allows them to qualify for better paying positions and overtime. This practice has the effect of preventing Murphy and other African-American employees from qualifying for positions of greater pay and overtime. Navistar's reasons for denying this training to African-American employees are always a pretense for race discrimination.

133.    When African-Americans are allowed to work overtime it is usually on the de-burring machine, which is physically demanding work. For the most part, similarly situated white employees, received easier assignments.

134.    As a result of the Defendant's discriminatory actions, Murphy has suffered extreme harm, including mental anguish, emotional distress, and mental suffering.

135.    **Representative Plaintiff Jo Ann Norris** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Norris by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees;

41

by being required to work in conditions in which she and other members of her race were demeaned, and by being subjected to unequal terms and conditions of employment.

136.     Plaintiff Jo Ann Norris has been employed by Navistar International Trucking Engine Company since 1972.  Throughout her career, Norris has observed racial slurs in Defendant's restrooms.  Norris also is aware that Calvin Drury, a white employee, continuously calls African-American employees **"Niggers."**

137.     In February 2000, Norris complained about the discrimination toward African-American supervisors.  As a result of making her complaints of discrimination, Norris was retaliated against through the assignment of more job duties.  The company made it difficult for Norris to protest the treatment of African-American managers.  Norris was also denied her benefits under the Collective Bargaining Agreement.  Norris requested time off as allowed under the Collective Bargaining Agreement, Norris was denied that by her supervisors.  White employees are allowed to take time off without any issues being raised by their supervisors.

138.     As a result of the Defendant's discriminatory actions, Norris has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

139.     **Representative Plaintiff Otis Riggins** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment.  This pattern and practice of racial discrimination has adversely affected Riggins by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally

held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

140.    Plaintiff Otis Riggins has experienced racial harassment and/or racial intimidation at Navistar. Riggins observed racial graffiti displayed on the Defendant's lockers and bathroom walls. Additionally, Riggins has witnessed **"hangman's nooses"** placed in the work area. In the Spring of 1999, a white employee by the name of Joe Kitsch, told Riggins that he was a card-carrying member of a racist organization. Riggins reported this to management and nothing was done. A few days later his vehicle was vandalized in the parking lot. He reported ,this damage but the perpetrator was never discovered. Riggins also had a cross placed in his drive way. He also reported this incident to Navistar, but no action was taken. Riggins has seen graffiti which includes **"high paid niggers."** Calvin Drury, in front of the management, has said **"get your black ass on the job boy."**

141.    Further, since becoming employed with Navistar, Riggins has observed that African-American employees are denied training routinely provided to white employees. This practice mainly occurs in Department 08, which is commonly referred to as Major Repair. Navistar officials routinely refuse to provide training to African-American employees in Major Repair on the basis of their race. This practice has the effect of preventing African-American employees from qualifying for positions of greater responsibility , pay, and overtime. Navistar's reasons for denying this training to African-American employees are always a pretense for race discrimination.

142.    As a result of the Defendant's discriminatory actions, Riggins has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

143.    **Representative Plaintiff Michael Ruggs** was adversely affected by the challenged

43

systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Ruggs by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

144. In 1994, Ruggs began his employment with the Navistar facility in Indianapolis, Indiana. Ruggs initially applied for a position as a millwright because he had a certificate from the Department of Labor Board certifying that he had a five-year millwright apprenticeship. He also had a journeyman's millwright card with eight years working in a trade. Ruggs was informed that the company did not have any millwright positions and he was hired as a millwright. After becoming employed, Ruggs was promoted into a Navistar Skilled Trades Department. This Skilled Trades Department discriminates against African-Americans as a class.

145. African-Americans are discriminatorily denied participation in the apprenticeship program. Out of 56 millwrights, only two are African-American; the rest are white individuals. After Ruggs became a millwright, he was subjected to constant racial harassment. For example, Ruggs had **"nappy headed nigger"** written on his tool box and he was also called a **"UAW skilled spade."** Ruggs, who reported such language, was informed that this was just "shop talk". He has

44

also been called a **"nappy-headed motherfucker"** by a white employee in front of a group of white employees, only to have his protest met with the response that it was just "shop talk."

146.     In September of 2001, Ruggs was terminated by the defendant after seven years of employment. Ruggs' termination is a result of retaliation and discrimination. He was asked to do a job which was not within the job duties and responsibilities of a member of a skilled trades. White hourly skilled trades are not asked to perform such tasks. When Ruggs objected to doing a job which was not within his job description, he was terminated from employment. This termination was retaliatory and discriminatory.

147.     As a result of the Defendant's discriminatory actions, Ruggs has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

148.     **Representative Plaintiff Christi Simms** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Simms by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which she and other members or her race were demeaned, and by being subjected to unequal terms and conditions of employment.

149.     Plaintiff Christi Sims has been employed since June 1995. Sims has experienced

discrimination by having to work in a hostile racial environment and with respect to job assignments and discipline. Although Sims is assigned as a repair person, she is also assigned to work on the assembly line. White repair persons are not assigned to work on the assembly line.

150. With respect to discipline, Sims states that she and other African-Americans are investigated whenever they have a confrontation with white employees. During these investigations, the company only asks for the white person's opinion as to what transpired. Whenever there is a skirmish between two white employees, both employees were called into the office for a conference. The company's continuing disregard of the African-American employees' recollection of events is consistent with the company's disregard for African-American employees as a whole. This indifference has created a racially hostile environment for many years at this facility without remedying the problems. Sims has also had to endure white employee Calvin Dreary using the words **"lazy nigger"** or **"nigger"** in the regular course of conversation. Over along period of time, the company failed to remedy Dreary's use of racially perjorative terms. Upon information and belief, Dreary has confirmed that he does use such terms and has done so in front of management.

151. As a result of the Defendant's discriminatory actions, Simms has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

152. **Representative Plaintiff Ervin Stewart** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Stewart by denying him the opportunity to work in an integrated environment in which African-American

46

employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members or his race were demeaned, and by being subjected to unequal terms and conditions of employment.

153.    Stewart has been employed since June 12, 1995 as an inspector. Since that time he has seen racial slurs in the bathrooms, including **"nigger"** on a frequent, consistent and uninterrupted basis. The company has not adequately and properly addressed these matters and the racial slurs have continued.

154.    Stewart has also been denied training which affects his ability to obtain other jobs within the facility. As a result, he has been discriminated with respect to appointment, selection decisions, and job assignments.

155.    As a result of this treatment, Stewart has suffered pain, embarrassment, trauma and humiliation as a result of the defendant's conduct. in conditions in which he and other members or his race were demeaned, and by being subjected to unequal terms and conditions of employment, including a racially hostile work environment.

156.    **Representative Plaintiff James L. Strong** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Strong by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally

held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

157.    James Strong has been employed since June 27, 1994. He was discriminated on the basis of his race. During the course of his employment on a regular, routine and weekly basis, Strong has seen racist graffiti in the Defendant's restrooms.

158.    Prior to the filing of his EEOC charge, there was no action to curtail this behavior. Management was not interested in correcting the racial graffiti which existed on a permanent basis in these restrooms.

159.    Strong is consistently denied opportunities to work overtime and to receive training. On May 8, 2000, he was told he was not qualified because he missed two questions on a test that had only been recently instituted. The use of any test as a means to deprive Strong from working overtime is discrimination. In the past, there was no use of testing in the assignment of overtime.

160.    As a result of the Defendant's discriminatory actions, Strong has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering.

161.    **Representative Plaintiff Matthew Whitfield** has himself experienced racial discrimination with respect to hiring. This pattern and practice of racial discrimination has adversely affected Whitfield by denying him the same opportunity to be hired as is enjoyed by similarly situated white applicants. Whitfield applied over a three year period in a futile attempt to obtain employment at Navistar. In approximately 1996, Matthew Whitfield applied at Navistar to obtain an electrician's position. In support of his application, he provided letters of reference from the Connor Corporation, Lloyd Electrics, American Instrument, Veco, Fluor-Daniel, Secor Industries and other letters

48

establishing beyond a doubt that he was qualified to be an electrician. Additionally in support of his application, Whitfield submitted a DD-214 documenting his electricity and electronics training received while on active duty in the United States Navy. Additionally, he submitted a copy of his Union Card demonstrating that he was a member of the International Brotherhood of Electrical Workers. Whitfield continuously inquired about the status of his application for employment. In May 1998, Whitfield submitted additional letters of reference including information demonstrating that he had been employed as an electrician with the Raytheon Systems Company located in Indianapolis, Indiana. Whitfield maintained contact with supervisory officials at Navistar, who always explained to him that his application was under consideration. During this time, upon information and belief, Navistar continued to hire white individuals for maintenance and electrical positions. Whitfield was not hired. Whitfield was as qualified as any person hired by Navistar. Moreover, upon information and belief, the skilled trades at Navistar are dominated by white persons and African-Americans have been historically excluded from these positions.

162. As a result of the Defendant's discriminatory actions, Whitfield has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering as a result of seeking employment with Navistar.

163. **Representative Plaintiff Frank Wilson,** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Wilson by denying him the opportunity to work in an integrated environment in which African-American employees hold

49

management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

164. Wilson has been called a " **nigger**", and has reported such conduct to his supervisor. Wilson has also seen nooses in the work place, and been exposed to the racial graffiti in the restroom of the plant. Wilson and other African-American employees have complained to management on several occasions regarding these racially demeaning incidents, however, no effective corrective action has been taken.

165. Wilson's work performance has been more closely scrutinized than his white counterparts, and he has received discipline for matters that are routinely overlooked by white supervisors in regards to white employees. For example, Wilson was disqualified from driving a fork lift, while white employees with no better records were allowed to keep such positions.

166. As a result of the Defendant's discriminatory actions, Wilson has suffered extreme harm, including, but not limited to, mental anguish, emotional distress, and mental suffering as a result of seeking employment with Navistar.

167. **Representative Plaintiff Freeman Young** was adversely affected by the challenged systemic practices and pattern of racial discrimination, racially hostile environment, and racial harassment and/or retaliation with respect to appointments, selection decisions, job assignments, promotions, training, discipline, testing, terminations, evaluations, and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Young by denying him the opportunity to work in an integrated environment in which African-American

employees hold management positions; by not being considered for job classifications traditionally held by white employees at Navistar; by being denied training regularly provided to white employees; by being required to work in conditions in which he and other members of his race were demeaned, and by being subjected to unequal terms and conditions of employment.

168.     Representative Plaintiff Young has been employed with Navistar since 1965 and currently works as an electrician. However, despite his many years of experience, Young is not allowed to work on certain equipment in his department. For example, there is a computer controlled piece of manufacturing equipment that Young is not allowed to operate even though he has over twenty years of experience as an electrician. White electricians, such as John Gammon are allowed to make changes to this machine at will.

169.     Throughout his employment with Navistar, Young has been exposed to a racially hostile working environment. For example, in February of 2000, Young observed a **"hangman's nooses"** displayed in a prominent area within the plant. Likewise, Young has also observed racist graffiti in Defendant's restrooms. About one and one-half years ago, Young observed the slur **"high paid niggers"** written on the wall of one of the Defendant's restrooms. Young and other African-American employees have complained to management on several occasions regarding these racially demeaning incidents, however, no effective corrective action has been taken.

170.     Throughout his employment with Navistar, Young has witnessed Navistar discriminate against qualified African-American applicants who sought jobs in the skilled trades. For example, in 1996, upon Young's recommendation, an African-American named Matthew Whitfield applied for a job as an electrician with Navistar. Whitfield possessed all of the qualifications required for the job by virtue of his twelve years of documented experience as an electrician, four years with

the Navy and eight years in the private sector, however, he did not receive the position. When Whitfield was denied employment, Young witnessed white employees with equal or less qualifications than him obtain employment with Navistar. Young never learned why Whitfield was not hired.

171.   In 1999 Whitfield received an interview with the Defendant. At this interview Whitfield produced documentation regarding his experience and his Journeyman's card which he received through the IBEW(International Brotherhood of Electrical Workers). After the interview Whitfield was informed that Rick Powell, a white member of management, was not going to approve his being hired. After Whitfield's second interview and rejection, Young again witnessed the Defendant hire white employees with equal or less qualifications than Whitfield. Few African-American employees are ever considered for positions as electricians with the Defendant. Indeed, the overwhelming majority of electricians that work for the Defendant are white. There are only three African-American electricians out of sixty. This constant failure to hire African-Americans into the skilled trades impacts Young's enjoyment of his job. After thirty-five years of employment, Young had hoped that by the time of his retirement Navistar would be a more diverse employer.

172.   As a result of Defendant's discriminatory actions, Young has suffered extreme harm, including, but not limited to, emotional pain, discouragement, and mental trauma.

## VI.   CLASS CLAIMS-COUNT ONE

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

173.   Representative Plaintiffs restate and incorporate by reference Paragraphs 1-172 above as part of this Count of the Complaint.

174.     Navistar has discriminated against the Representative Plaintiffs and the class they seek to represent with regards to hostile environment, hiring, training, testing, promotion, demotion, job assignments, training, skills qualification, transfer, layoff, discharge, disciplinary practices, racial harassment, racial intimidation, retaliation, and other terms and conditions of employment because of their race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and 1981a.

175.     Navistar's conduct has been intentional, deliberate, willful and conducted with disregard of the rights of Plaintiffs and members of the proposed class.

176.     By reason of Navistar's discriminatory employment practices, the Representative Plaintiffs and the proposed class members have experienced extreme harm, including loss of compensation, wages, back and front pay, compensatory and punitive damages, and other employment benefits, and, as such, are entitled to all legal and equitable remedies available under Section 1981.

**VI.     CLASS CLAIMS-COUNT II**

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e**

177.     Representative Plaintiffs restate and incorporate by reference Paragraphs 1-176 above as part of this Count of the Complaint.

178.     Navistar has discriminated against the Representative Plaintiffs and the class they seek to represent with regards to hiring, compensation, promotion, demotion, job assignments, training, skills qualification, transfer, layoff, discharge, disciplinary practices, racial harassment, racial intimidation, retaliation, and other terms and conditions of employment because of their race, in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991.

53

179. Navistar's conduct has been intentional, deliberate, willful and conducted with disregard of the rights of Plaintiffs and members of the proposed class.

180. By reason of Navistar's discriminatory employment practices, the Representative Plaintiffs and the proposed class members have experienced extreme harm, including loss of compensation, wages, back and front pay, and other employment benefits, and, as such, are entitled to all legal and equitable remedies available under § 2000e.

VII. **PRAYER FOR RELIEF**

Wherefore, the Representative Plaintiffs, on behalf of themselves and the proposed class members whom they seek to represent, request the following relief:

1. Acceptance of jurisdiction of this cause;

2. Certification of the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), Rule 23(b)(2) and/or Rule 23(b)(3) on behalf of the proposed Plaintiff class, and designation of Representative Plaintiffs as representatives of the class and their counsel of record as class counsel;

3. A declaratory judgment that the defendant's employment practices challenged herein are illegal and violative of the rights secured to Representative Plaintiffs and members of the proposed class;

4. A preliminary and permanent injunction against the Defendant and their partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, usages, racial discrimination and retaliation by the Defendant set forth herein;

5. An Order requiring the defendants to initiate and implement programs that

54

(i) describes how and when Navistar will investigate complaints of racial harassment, (ii) assures the employee that he or she will be told the results of the investigation, (iii) describes the actions which will be taken by management if the investigation supports the complainant; (iv) assures the employee that Navistar will make follow-up inquiries to determine the problem has been solved (v) provide equal employment opportunities for African-American employees; (vi) remedy the effects of the defendants' past and present unlawful employment practices; and (vii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

6.      An Order requiring the defendant to initiate and implement systems of assigning, training, transferring, and assigning overtime  African American employees in a non-discriminatory manner;

7.      An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described above, which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described above.

8.      An Order placing or restoring the plaintiffs and the class they seek to represent into those jobs they would now be occupying but for the defendants' discriminatory practices.

9.      An award of back pay; front pay; compensatory damages, punitive damages, nominal damages, lost benefits; preferential rights to jobs; damages for lost compensation and job benefits suffered by the individual plaintiffs and the class they seek to represent; and any other appropriate equitable relief to the plaintiffs and class members;

10.      An award of litigation costs and expenses, including reasonable attorneys' fees, to

55

the Plaintiffs and class members;

     11.     Prejudgment interest; and

     12.     Such other and further relief as the Court may deem just and proper.


Respectfully submitted,

_____

Lee D. Winston, ASB-6407-072L

_____

Roderick T. Cooks, ASB-5819-078R
Attorneys for the Plaintiffs


**OF COUNSEL:**
**GORDON, SILBERMAN, WIGGINS & CHILDS, P.C.**
420 North 20th Street
1400 SouthTrust Tower
Birmingham, Alabama  35203
(205) 328-0640

JS 44
(Rev. 12/96)

*(CITI)*

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Greg Allen

JUDGE BUCKLO

## DEFENDANTS

Navistar International

MAGISTRATE JUDGE SCHENKIER

**DOCKETED**
OCT 17 2001

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _DuPage_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Lee Winston, Red Cobbs
Gordon, Silberman, Wiggins & Child
1900 SouthTrust Tower  Bha, AL

ATTORNEYS (IF KNOWN)

## 01C 7955

FILED OCT 16 ... CLERK U.S. DISTRICT COURT

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C 2000, 42 U.S.C 1981

## VII. REQUESTED IN COMPLAINT

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. This case

☐ is not a refiling of a previously dismissed action.

☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE   Oct 16, 20·1

SIGNATURE OF ATTORNEY OF RECORD   Lee Winst